UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEEPA SONI, M.D., | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-12028-JGD |
| | ) | |
| BOSTON MEDICAL CENTER, CORP.) | | |
| BOSTON UNIVERSITY NEURO- | ) | |
| SURGICAL ASSOCIATES, INC., | ) | |
| BOSTON UNIVERSITY, LARRY CHIN | ) | |
| M.D., AND ARTHUR DAY, M.D. | ) | |
| Defendants | ) | |
| | ) | |

OPPOSITION OF THE PLAINTIFF, DR. DEEPA SONI, TO THE DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS, OR, IN THE ALTERNATIVE
TO STRIKE

INTRODUCTION

Now comes your Plaintiff, Dr. Deepa Soni ("Dr. Soni"), to oppose the motion to dismiss or strike

of the Defendants Boston Medical Center Corporation ("BMC"), Boston University Neurosurgical

Associates, Inc. ("BUNA"), Trustees of Boston University ("BU"), Lawrence Chin, M.D. ("Dr. Chin")

and Arthur Day, M.D. ("Dr. Day"), collectively, "Defendants." Dr. Soni opposes Defendants' motion on

the following grounds: 1) due to preemption and principals proscribing abstention by the Federal Courts,

the Colorado River doctrine does not apply and this Court should retain jurisdiction of Dr. Soni's claims

because it has **exclusive jurisdiction** over Dr. Soni's FCA claims; 2) Dr. Soni states viable claims under

the False Claims Act for retaliation; 3) Dr. Soni states proper claims for civil conspiracy; 4) Dr. Soni's

claims of intentional and/or negligent infliction of emotion distress are based on acts committed by

Defendants' outside the scope of legitimate business interests and, as such, are not barred by the

Massachusetts Workers Compensation Act; and, 5) Dr. Soni's claims have been pled in a clear and

detailed fashion to provide Defendants with notice of the facts and the legal elements of her claims and,

as such, are in compliance with F.R.Civ.P. 8A. In support of her opposition, Dr. Soni relies upon the

following facts and arguments.

1

FACTS AND PROCEDURAL HISTORY

Dr. Soni's pleadings are not haphazard or vexatious, as Defendants attempt to portray. Rather, in an attempt to scare off Dr. Soni, Defendants, BMC, BUNA, and Larry Chin sued Dr. Soni in a state action under a contract theory for return of her salary to them, allegedly because she failed to do paperwork necessary for them to collect upon the some of the many surgeries she performed during her brief, yet tortured employment with BMC/BUNA (Defendants' Ex. A and E BMC/BUNA/Chin lawsuit against Dr. Soni , the so called Soni I, Defendants' name the lawsuit in such a fashion to gloss over the vexatious nature of their actions in suing Dr. Soni for her salary). BMC, BUNA, and Chin sued Dr. Soni in an effort to keep her from filing her federal claims in this Court, due in part to an associated claim against Defendant Day, on which a preliminary injunction had been allowed (Plaintiff's Ex. A Gertner Decision against Defendant Day in the Sagun Tuli matter). Dr. Sagun Tuli, is an attending neurosurgeon at the Brigham and Women's Hospital, Inc. ("BWH"). Dr. Tuli was the third Indian female neurosurgeon to institute a lawsuit against Dr. Day based on sex and national origin/race discrimination (Plaintiff's Ex. A Complaint ¶¶68-71). Dr. Soni was the second (Complaint ¶¶68-71). Dr. Tuli pursued her claims against Dr. Day via a motion for preliminary injunction before Judge Nancy Gertner. Dr. Soni instituted her claims against Dr. Day at the MCAD, withdrew them to this Court, and filed them as related claims in the Tuli action (The so called Soni II).

The Defendants in the instant action were aware that Dr. Soni intended to join her claims against BMC, BUNA, BU and Chin with her claims against Dr. Day, because in an effort to mediate her claims during a meeting in April of 2008, she so informed the Defendants and, because Dr. Day's retaliation against Dr. Soni and/or the publication of her lawsuit against Dr. Day in the Boston Herald and other newspapers in temporal proximity to her termination from Boston Medical Center, likely substantially contributed to her firing, which is the subject of the current action (Complaint ¶¶86 and 87).

2

Dr. Soni also informed Defendants early on of her claims under the False Claims Act, which likely played a part in the decision of BMC/BUNA and Chin to sue her in state court for return of her salary. Dr. Soni's contract for employment with the Defendants contained a mandatory mediation clause (referenced by Defendants). Despite that clause and despite having asked for mediation, the Defendants instituted a suit against Dr. Soni in state court on May 7, 2008 (Ex. A to Defendants' motion). The purpose of that lawsuit was an attempted destruction of federal court jurisdiction on Dr. Soni's federal court claims[1]. For the reasons argued in this opposition this Court should retain jurisdiction of Dr. Soni's claims. To do so will not impede the state court, as Defendants have stalled discovery in the state court action. It is misleading for the Defendants to state that "the parties have exchanged written discovery and have begun producing documents." While the Plaintiff has produced nearly 1500 documents, the Defendants have produced none. While the Plaintiff has provided detailed testimony at deposition, Dr. Chin has stalled the scheduling of his deposition for months. There is little reason for the Defendants to complain of duplicative discovery (especially when agreements can be entered regarding the use of discovery in both cases to avoid duplicative efforts).

Dr. Soni was a resident in neurosurgery at Harvard University's combined seven year neurosurgery residency program at BWH/Children's Hospital between July 1, 1999 and June 30, 2006 (Complaint ¶¶ 35, 53). Between July 1, 2006 and June 30, 2007, Dr. Soni remained in the employ of BWH as a neurosurgery fellow. (Complaint ¶36 ). On July 1, 2007, Dr. Soni became employed by BUNA, a neurosurgery practice group at BMC (Complaint ¶37). Under her contract for employment with BUNA, Dr. Soni had privileges at BMC and an associate professorship at BU (Complaint ¶39).

---

[1]     Dr. Soni had filed an action in state court on her state court issues seeking a preliminary injunction to prevent her termination. That injunction was denied in great part because the United States Supreme Court has held that employment terminations can be remedied by monetary damages and thus do not constitute irreparable harm. Samson v. Murray, 415 U.S. 61, 90-92 (1974) (State Court decision Defendants' Ex. D).

3

During her residency, Dr. Soni worked under the supervision of Dr. Arthur Day at BWH (Complaint ¶59). Dr. Day holds positions of significant power in the neurosurgery community nationwide, including a position as a Chair of the Committee which approves neurosurgery residency programs (Complaint ¶61). BMC/BUNA were applying to Dr. Day's Committee for a residency program during all times relevant to Dr. Soni's employment with BMC/BUNA (Complaint ¶¶81-85). Dr. Day has well known tendencies to discriminate against women and minorities and is very vindictive (Complaint ¶¶62-78). Dr. Soni was subjected to discrimination and retaliation at the hands of Dr. Day (Complaint ¶¶78). Dr. Day has defamed her in the neurosurgery community nationwide and blackballed her from employment with many institutions (Complaint ¶¶62-78,229). Dr. Soni instituted a lawsuit against Dr. Day, BWH/Children's Hospital and Dr. Mark Proctor on or about April 25, 2007 (Complaint ¶78). On July 1, 2007, Dr. Soni began her employment BMC/BUNA under Chairman Dr. Chin (Complaint ¶37). Dr. Soni did not inform BMC,.BUNA, or Dr. Chin of her lawsuit against Dr. Day prior to her hiring (Complaint ¶86). Dr. Soni informed BMC,.BUNA, and Dr. Chin of her lawsuit in late December of 2007, when she became aware that the lawsuit was to be publicized by the Boston Herald (Complaint ¶86). Dr. Soni alleges that her termination from BMC/BUNA, which became effective July 31, 2008, but of which she was notified on March 3, 2008, in part arises out of retaliation for her claims against Dr. Day, is in part based on Dr. Chin's discrimination against her based on race and sex, and is in part because she had complained of violations of Medicare laws and patient safety standards by BMC/BUNA during her employment (Complaint generally).

As has been stated, BMC/BUNA and Dr. Chin sued Dr. Soni in state court (Defendants' Ex. A and Ex. E). BU and Dr. Day have not and are not parties in the state case. Dr. Soni submitted counterclaims against BMC/BUNA and Chin in the state court on the following state law grounds (Counts I-III – Chapter 151B against Dr. Chin, BUNA and BMC, Counts IV-VI Defamation against Dr. Chin, BUNA and BMC, Count VII – Intentional Interference with Advantageous Relations against Dr.

4

Chin, Count VIII – Intentional Interference with Contractual Relations against Dr. Chin, Counts IX-XI

Massachusetts Whistleblower Protection Act Claims Against Dr. Chin, BUNA and BMC, Count XII –

Claim Against BUNA for breach of the implied covenant of good faith and fair dealing, Count XIII-XIV,

Negligent Training of Supervisors by BUNA and BMC, and Count XV – General Injunctive Relief).  Dr.

Soni's current Complaint names not only BMC/BUNA and Dr. Chin, but also names BU and Dr. Day and

was instituted on separate grounds, primarily Federal in nature, to wit (Count I – Unlawful Retaliation

Under the False Claims Act, Count II – Violations of Section 1981, Count III – Retaliation Under 42 U.S.

C. section 1981, Count IV – Title VII – Discrimination, Count V – Title VII – Retaliation, Count VI –

Conspiracy to Violate 42 U.S.C. section 1981 and Title VII, and Count VII – Intentional Infliction of

Emotional Distress). For the reasons set forth in this opposition, Dr. Soni's complaint in this action must

not be dismissed.

## ARGUMENT

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the standard of review is that all well-pleaded factual allegations in

the complaint are taken as true and are viewed with all reasonable inferences in the plaintiffs' favor.  ACA

Fin. Guar,. Corp. v. Advest, Inc., 512 F.3d 46, 57 (2008).  ACA Fin. Guar. Corp, recognized that the

United States Supreme Court has recently altered the Rule 12(b)(6) standard in a manner which gives it

more heft.  The rule is now that in order to survive a motion to dismiss, a complaint must allege "a

plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967-69 (2007) *see also*

Rodriguez-Ortiz. V. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).  For the reasons set forth herein,

Dr. Soni's states claims, which must not be dismissed.

I.      DR. SONI STATES A PRIMA FACIE CASE OF RETALIATION UNDER THE FALSE
        CLAIMS ACT WHICH MUST BE HEARD BY THIS COURT UNDER EXCLUSIVE
        JURISDICTION PRINCIPLES.

The Federal False Claims Act, under 31 U.S.C. §3730(h) provides:

"An employee who is discharged . . . or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section, including <u>investigation for</u>, initiation of, testimony for, or assistance in an action filed <u>or to be filed</u> under this section, shall be entitled to all relief necessary to make the employee whole." (Emphasis added).

The statute provides that "An employee may bring an action <u>in the appropriate district Court of the United States</u> for the relief provided in this subsection." (Emphasis added). 31 U.S.C. sec. 3730(h). The language of the statute indicates that Congress intended that these claims be heard in a federal court. In fact, pursuant to 31 U.S.C. sec. 3732(a) "Any action under section 3730 may be brought in any judicial district in which defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3739 occurred." There is no doubt that this claim belongs here in the federal court as judicial district clearly presumes federal court jurisdiction. Although there is little case law on this issue because jurisdiction so clearly belongs in the federal court, the exclusivity of the provision was discussed in <u>Giles v. United States</u>, 233 Fed.Appx. 987 [2007 WL 788350] (Fed. Cir. 2007), where the Court of Federal claims, analyzing sec. 3732(a) stated that qui tam suits "may only be heard in the district courts." (dismissing a plaintiff's complaint for lack of subject matter jurisdiction); see also <u>LeBlanc v. United States</u>, 50 F.3d 1025, 1031 (Fed. Cir. 1995) (A former federal employee brought action against the United States alleging that he was terminated when he alleged fraudulent mishandling of government contracts and that the government improperly interfered in his FCA action. The Court of Federal Claims lacked jurisdiction over the plaintiff's wrongful discharge claim because "The Court of Federal Claims has no authority to make that determination because qui tam suits may only be heard in the district courts." <u>Id</u>. at 1031).. If the statute and the case law is not clear enough, this Court may also consider the preemption principal that where a federal statutory scheme is complete, jurisdiction is in federal courts for claims under the federal statute. See <u>Riegel v. Medtronic,</u>

Inc., 128 S.Ct. 999 (2008) (FDA statute comprehensive preempts state law claims).[2]

Congressional history also indicates that Congress intended to preempt state action on FCA claims.[3]

There is also no doubt that Dr. Soni states a claim under the FCA.

Dr. Soni agrees that to prevail on a False Claims Act retaliation claim, she must ultimately show that 1) her conduct was protected under the FCA; 2) that the employer knew that she was engaged in such conduct; and 3) that the employer discharged or discriminated against her because of her protected conduct. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 235 (1st Cir. 2004).

As the Defendants have argued, Karvelas was decided against the Plaintiff alleging a claim under 31 U.S.C. §3730(h). But it is important to note that the First Circuit concluded that the Plaintiff in

---

[2] In Reigel, a cardiac patient sued the manufacturer of a balloon catheter used in his angioplasty asserting state law claims. The District Court granted the defendant's Motions for Summary Judgment. The Second Circuit affirmed. The Supreme Court affirmed the Summary Judgment in favor of the defendants. The Supreme Court addressed the Medical Device Amendments of 1976 (MDA), and it found that it is implausible that the MDA was meant to grant greater power (to set state standards different from, or in addition to, federal standards) to a single state jury than to state officials acting through state administrative or legislative lawmaking processes. Permitting a state jury to have such power was not required or suggested by "the broad language Congress chose in the MDA" and the Supreme Court "will not turn somersaults to create it." Id. at 1008. "The operation of a law enacted by Congress need not be seconded by a committee report on pain of judicial nullification." Id. at 1009. "It is not our job to speculate upon congressional motives." Id.

[3] The Senate bill of the FCA expressly permitted the recovery of punitive damages. See 132 Cong. Rec. S11,238 (Aug. 11, 1986). However, this provision was subsequently deleted from the Act. See 132 Cong. Rec. S15,018 (Oct. 3, 1986). The Legislative History - The False Claims Act, 1986 Amendments – Senate Report S. Rep. No. 345, 99th Cong., 2d Sess. (July 28, 1986), Reprinted in 1986 U.S. Code Cong. & Admin. News 5266, states the purpose of the legislation was to enhance the Government's ability to recover losses sustained as a result of fraud against the Government. The pervasiveness of fraud necessitated modernization of the "Government's primary litigative tool for combatting fraud; the False Claims Act." The history also states the proposed legislation is intended to "encourage any individual knowing of Government fraud to bring that information forward." Of course congress in referring to the Government was referring to the Federal Government, which investigates these claims. The history goes on to state while most False Claims Act cases are litigated in federal district court under 28 U.S.C. §1345 (governing suits by the United States), the U.S. Court of Federal Claims also has jurisdiction for counterclaims brought by the United States under the Act, through 28 U.S.C. §1503.

7

Karvelas did adequately allege the first two elements of his claim. The appellate court only found that the Plaintiff had failed to adequately allege the third element, that the employer discharged him because of protected conduct. Id. at 236. Dr. Soni alleges all elements of the claim and her allegations are far more detailed than those of Dr. Karvelas.

Dr. Soni's has alleged in Paragraphs 196-214 and 258-273 of her complaint with sufficient detail that she engaged in an investigation regarding improper/fraudulent billings to Medicare and the Federal Health Programs and that she was discharged from employment as a direct result of those investigations and her complaints pertaining to those billing practices. She has further alleged that Defendants did terminate her for the reasons outlined in the Complaint, including but not limited to retaliation and False Claims Act protected activity (Complaint Para. 202). She stated that all Defendants had a duty and obligation prevent Dr. Chin from undertaking the unlawful acts perpetrated against Dr. Soni, but that Defendants approved and ratified those unlawful acts (Complaint Para. 205). Dr. Soni complained about medical billing matters to Dr. Chin and Vincent Falco, the department administrator (Complaint Para. 206). Dr. Soni has also informed this Court that she investigated Defendants' failure to comply with medical standards of care and investigated fraudulent billings to the Federal Health Care Programs (Complaint Para. 269). She stated that In January and February (the two months before she was told that she was being terminated), Dr. Soni complained to her supervisors with regard to quality assurance issues (which may arise to fraudulent billing issues and fraudulent Medicare certification issues) and of fraudulent medical billing matters (Complaint Para. 207).

Dr. Soni alleged Dr. Chin retaliated against her in an effort to silence her investigation of fraudulent billings at BMC which relate to Medicare/Medicaid program compliance (Complaint Para. 214). Dr. Soni alleged Defendants did discharge Dr. Soni from her employments for reasons contrary to public policy, as set out in 42 U.S.C. §3730(h), and without just cause (Complaint Para. 259). Dr. Soni alleged that Defendants retaliated because of Dr. Soni's complaints regarding their "repeated and

8

continual failure to comply with minimal Conditions of Participation in the Medicare Program and their

repeated and continual fraudulent billings to the Federal Health Care Program" (Complaint Para. 260).

Defendants retaliated against Dr. Soni for lawful conduct protected under the FCA (Complaint Para. 262).

In fact, she alleged Defendants terminated her because of her protected conduct (Complaint Para. 271).

Dr. Soni's detailed Complaint should be read so that all factual allegations are construed as true

and, if so read, her facts not only clearly establish that she was engaged in protected conduct, but that her

employer knew it and terminated her for it.  Although the finding of Karvelas is inapposite to the current

case, the rulings in Karvelas are helpful to Dr. Soni.

Unlike what has been argued by the Defendants, the First Circuit's ruling in the Karvelas case,

dismissing Dr. Karvelas' case for failure to state a claim, was based on Dr. Karvelas failing adequately to

allege the third element, that he was terminated because of his protected conduct. *See* United States ex rel.

Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 236 (1st Cir. 2004).        The First Circuit found

that Dr. Karvelas with his claims, which can be characterized as serious equipment failures and failures of

the standard of care, had shown that his conduct was protected under the FCA and that the employer did

know that the employee was engaged in such conduct.  Id. at 236.  In fact, the First Circuit stated,

"Karvelas provided notice of protected conduct under the FCA.  Therefore, we find that Karvelas has

alleged facts sufficient to support an inference that he engaged in protected conduct under the FCA and

that the defendants were put on notice of that conduct."  Id. at 239.  Defendants' have failed to identify

this language to the Court.

Karvelas recognized that "Congress added 31 U.S.C. §3730(h) to the False Claims Act in 1986 to

protect employees who pursue, investigate, or contribute to an action exposing fraud against the

government."  Id. at 235.  The First Circuit stated that  in order to satisfy the first element that the plaintiff

must allege that she engaged in activity protected under the FCA, but noted that sec. 3730 (h) did **not**

require "the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the

9

alleged retaliation." Id. at 236. Karvelas found that "Protected activity should therefore be interpreted broadly." Id. at 236. It defined protected activity as "conduct in furtherance of an action under the FCA" that is, "conduct that reasonably **could** lead to a viable FCA action, " finding "this standard is most consistent with the broad interpretation for protected activity under §3730(h) urged by the legislative history." Id. at 236. The First Circuit advocates for a broad interpretation of FCA claims and indicates not that Dr. Soni must have a winning claim on the face of her complaint, but that she must state facts regarding each elements of an FCA claim, Dr. Karvelas could not because he was not fired because of his protected conduct. Dr. Soni has alleged that she was at least, in part, terminated for her FCA protected conduct.

Additionally, the precedent case law, which is cited favorably by the First Circuit in Karvelas, supports the fact that Dr. Soni has stated a claim and disputes the Defendants' position that Dr. Soni must somehow state a winning claim by her pleading, in the absence of any discovery.  United States ex rel. Yesudian v. Howard University, 153 F.3d 731 (D.C. Cir. 1998). The Yesudian Court clearly stated that, "[T]he protected conduct element of such a claim does not require the plaintiff to have developed a winning qui tam action before he is retaliated against." Id. at 739.  Again, unlike what is argued by Defendants, Yesudian does not stand for the proposition than "an employee's investigation of nothing more than her employer's non-compliance with federal or state regulations is not protected conduct," (a quote from Defendant's brief). The Yesudian Court stated, "There is nothing in that language (the FCA statute) to suggest that the employee must already have discovered a completed case" and stated that "§3730(h) expressly includes '**investigation for** . . . an action filed or to be filed' within its protective cover." Id. at 739-40 (emphasis added). Yesudian provided the policy argument in support of the position that investigation is included as protected conduct when it stated, "It was "Congress' intent to protect employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together." Id. at 740.  This policy argument must be applied here because we are

10

at a pre-discovery stage and Dr. Soni's complaint must be looked at in light of that fact. As the <u>Yesudian</u> court recognized, detail regarding the actual fraudulent claims that were submitted "is the kind of information a plaintiff normally cannot acquire until he files a suit and obtains the benefits of court-sanctioned discovery." <u>Id</u>. Certainly, "[T]here is no requirement that to be protected, a plaintiff must have gathered all of the evidence by the time of the retaliation." <u>Id</u>. Yesudian held that it was not necessary for the plaintiff to know that the investigation could lead to a viable FCA case against the employer; because if that were not the case, only lawyers or those versed in the law would be protected by the statute. <u>Id</u>. at 741. Dr. Soni at this early stage cannot be expected to have a completed claim, she must merely be expected to have stated a claim containing all factual elements and she has. Next, again unlike what has been argued by Defendants, Dr. Soni is not required to plead and prove that her employer knew about her protected conduct at this early stage. The First Circuit has indicated that an inference of scienter from all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard" and is sufficient at a motion to dismiss. <u>In Re Brooks Automation Inc</u>., 2007 U.S. Dist. LEXIS 8804 (November 2007).

Finally, Dr. Soni's allegations regarding lack of equipment and substandard care issues are not pled only as issues regarding the quality of care at BMC. Instead, she has pled these failures as fraud with respect to certifications of conditions of participations and of fraudulent billing practices (i.e. BMC either overbilled by reason of not meeting standards, sometimes intentionally by choosing practices so they could bill for additional surgery).   Many federal courts have found FCA violations based on failures to comply with Medicare conditions of participation. *See e.g.* <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 20 F.Supp.2d 1017, 1020 (S.D. Tex. 1998). (held plaintiff stated a claim based on defendants falsely certifying that the Medicare services identified in the "hospital annual cost reports" complied with the laws and regulations dealing with the provision of healthcare services); <u>United States ex rel. Pogue v. American Healthcorp, Inc.</u>, 914 F.Supp. 1507,1509 (M.D. Tenn. 1996)

11

(There was an FCA claim alleged because "by submitting the claims, Defendants implicitly stated that they had complied with all statutes, rules, and regulations governing the Medicare Act.").

The Thompson court identified that the Ninth and Fifth Circuits have found that "false certifications of compliance create liability under the FCA when certification is a prerequisite to obtaining a government benefit." Id at 1020. In Thompson, the plaintiff had alleged "that the government conditioned payment on the Defendants' certifications and that Defendants falsely certified compliance." Id at 1020. Thompson stated the FCA imposes liability "on a person who knowingly makes a false statement in order to get a false or fraudulent claim paid." Id. at 1020. Thompson held the Plaintiff's allegations that defendants "made or caused to be made false statements to the government to obtain payment of claims is a literal and logical application of the statute." Id. at 1049.

Dr. Soni has alleged throughout her complaint that she investigated BMC's Conditions of Participation in the Medicare program via her quality assurance issues and her billing issues, and that she was retaliated against for that conduct by her termination and, as such, she has stated a claim under §3730(h). Her claims cannot be dismissed.

II.     INDIVIDUAL LIABLITY IS AVAILABLE AS TO DEFENDANTS, DAY AND CHIN UNDER TITLE VII. .

Defendants have argued that the Title VII discrimination and retaliation claims against the individual Defendants, Dr. Chin and Dr. Day, should be dismissed. Dr. Soni, however, maintains that her claims under 42 U.S.C. §2000e do state a claim against Dr. Chin and Dr. Day. To start, the term "employer" in 42 U.S.C. §2000e(b) is defined as "a person in an industry affecting commerce . . . and any agent of such person." (Emphasis added). This language has been interpreted by the United States District Court for the District of Massachusetts to support the finding that individual agents of an employer may be personally liable for violations of Title VII. See Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1048 (D. Mass. 1995) (finding that the plain meaning of Section 2000e(b) is that "both employers, as entities, and their agents, as individuals, are to be bound by Title VII's dictates" and noting

12

that other courts have recognized "this clear meaning" of the statute). *See also* Scarfo v. Cabletron Systems, Inc., 54 F.3d 931, 952 (1st Cir. 1995) (affirming a district court's instructions permitting a finding of individual liability under Title VII and finding that the contours of individual liability under Title VII "are currently in a state of evolving definition and uncertainty").          Moreover, Dr. Soni submits that even though Dr. Chin and Dr. Day were not technically her employer, they may be held liable for their acts of discrimination and retaliation under Title VII where, as here, they aided and abetted in the imposition of adverse employment actions against her.

III.     DR. SONI STATES CLAIMS FOR CIVIL CONSPIRACY

The Defendants assume that Dr. Soni's conspiracy claims fall only under state law.  Dr. Soni's Complaint has also raised allegations that state a claim against Dr. Chin and Dr. Day under 42 U.S.C. §1985. The Complaint is captioned Conspiracy to Interfere With Civil Rights.  Under 42 U.S.C. §1985, if two or more persons conspire for the purpose of depriving any person of the equal protection of the laws, or of equal privileges and immunities under the laws, the injured party may have an action for the recovery of damages against any one or more of the conspirators. Hunt v. Weatherbee, 626 F.Supp. 1097, 1105 (D. Mass. 1986).  In Hunt, the Massachusetts District Court recognized that the majority rule in the lower federal courts is that sex-based discrimination, as alleged by Dr. Soni, falls within the scope of §1985. Id. at 1105.  In assessing the civil rights and conspiracy claims raised by the plaintiff, a female carpenter's apprentice, with similar allegations to Dr. Soni, the court concluded that "it would be reasonable to infer that there was a conspiracy to act against her" and that the allegations were "sufficient to withstand a motion to dismiss." Id. at 1107-08.

According to the First Circuit, under *42 U.S.C. § 1985(3)*, a plaintiff, like Dr. Soni, must show that the defendants (1) conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws

13

(3) causing to be done an act in furtherance of the object of the conspiracy (4) resulting either in injury to another person or his or her property or in depriving him or her of having or exercising any right or privilege of a United States citizen. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). LaManque v. Massachusetts Dept. of Employment & Training, 3 F. Supp. 2d 83, 90-91 (D. Mass. 1998). To satisfy the second element, plaintiffs must establish, *inter alia*, both that "'invidiously discriminatory *animus* [lay] behind the conspirators' action,' . . . and . . . that the conspiracy '*aimed at* interfering with rights' that are 'protected against private . . . encroachment'" (emphasis added) (citations omitted). Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993).

Dr. Soni has pled the necessary elements, at this early stage, her claims meet the pleading requirements. It is too early for this Court to assess evidence of the intent of the alleged conspirators. Intent is even a difficult issue at summary judgment and often summary judgment is denied because intent is for the jury to decide. Alberto Dominguez Cruz v. Suttle Caribe, Inc., 202 F.3d 424 (2000). Dr. Soni pleads joint action, for the purposes of discriminating against her or retaliating against her, termination in furtherance of the conspiracy and injury to her (complaint para 215-232). These facts likewise meet the state law standards for conspiracy even under the Kurker v. Hill standard which requires (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. Heinrich v. Sweet, et al., 49 F. Supp. 2d 27 (1999), citing Kurker v. Hill, 44 Mass. App. Ct. 184, 188-89 (1998). Dr. Soni has alleged a common goal on the part of Defendants. She has stated Dr. Day's power and influence, especially as to residency programs, and Dr. Chin's great desire for a residency program, and the relationship between Dr. Day and Dr. Chin, which she alleges caused her removal from her position in retaliation for having sued the powerful Dr. Day, in favor of Dr. Chin getting his residency program

14

approved and perhaps other benefits (Complaint para 215-232). These facts state a claim for conspiracy.

For this reason, the Defendants' motion to dismiss must be denied.

IV.     DR. SONI'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
        AGAINST BMC, BUNA, BU AND DR. CHIN ARE NOT BARRED BY THE WORKERS
        COMPENSATION ACT BECAUSE THE ACTIONS OF DEFENDANTS WERE OUTSIDE
        THE SCOPE OF EMPLOYMENT.

Case law is still evolving in the area of whether claims against co-workers, including supervisors, like

Dr. Chin and Dr. Day, for intentional infliction of emotional distress are barred by the workers

compensation exclusivity provisions. In general, courts have held that this tort is barred if it is committed

within the course of the coworkers' employment and in furtherance of the employer's interests. Lavalley

v. Quebecor World Brook Servs. LLC., 315 F. Supp. 2d 136 (D. Mass. 2004). However, motions to

dismiss have been denied where there was not yet enough information to determine whether defendant

was acting within the course of employment or if the action was related to the interests of the employer.

Honey v. Westfield Gage Co., 95 F. Supp. 2d 29 (D. Mass. 2000). There are issues in this case about

actions by Doctors Day and Dr. Chin which constitute actions outside of the scope of their employment

and outside of the interests of the employer, including but not limited to (Complaint paragraphs 215-

232). Even acts that occur during the workday may survive a motion to dismiss where the actions are not

in the interests of the employer, as in discriminatory acts by supervisors. Walters v. President & Fellows

of Harvard Coll., 645 F. Supp. 100 (D. Mass. 1986). See e.g. Fusaro v. Blakely, 40 Mass. App. Ct. 120

(1996) (intentional infliction of emotional distress claim arising out of sexual harassment was not barred).

See also Cuddi v. Gallery Gift Shoppes, 17 Mass. L. Rptr. 65 (Mass. Super. Ct. Oct.. 24,

2003)(harassment by coworkers due to plaintiff's sexual orientation was outside the scope of

employment, thus claims for intentional and reckless infliction of emotional distress were not barred by

WCA and motion to dismiss was denied). Based on Dr. Soni's allegations of acts by Dr. Day and Dr.

Chin outside the scope of their employment and based on her claims of discrimination, Dr. Soni's claims

of intentional and negligent infliction of emotional distress must not be dismissed.

15

V.     BASED ON FCA PREEMPTION AND FOR REASONS DISFAVORING ABSTENTION
       BY THE FEDERAL COURTS THIS COURT SHOULD RETAIN JURISDICTION OVER
       DR. SONI'S CLAIMS.

The Colorado River doctrine does not prevent this Court from retaining jurisdiction of Dr. Soni's

current case.  Instead, its rulings and the First Circuit and Supreme Court cases interpreting it instruct that

this Court should retain and hear this case for all purposes.  The United States Supreme Court's decision

in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) counsels for

retention of this case in stating, "[T]he mere potential for conflict in the results of adjudications, does not,

without more, warrant staying exercise of federal jurisdiction." Id. at 816.  In fact, Colorado River stated,

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state

court is **no bar** to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'"

Id. at 817, citing McClellan v. Carland, 217 U.S. 268, 282 (1910).  It also stated,  that in general, there

exists a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

at 817.

The First Circuit in Sevigny v. Employers Insurance of Wausau, 411 F.3d 24 (1st Cir. 2005)

holding abstention inappropriate in the case before it found that "Colorado River is scarcely a formal

doctrine at all and that abstention occurs only in narrowly circumscribed situations." Id. at 29.  The First

Circuit explained that the decision in Colorado River concluding that abstention was warranted was

largely based on "the special federal statute encouraging unified resolution of water disputes" and "the

massive impact on state-law water rights that the federal action would have had in light of the large

number of parties involved." Id. at 29.  The First Circuit stated that "Colorado River is a case peculiarly

tied to its own facts and to the federal statute there construed." Id. at 30.  The First Circuit used strong

language to remind its Courts that there are rare exceptions to the again "virtually unflagging obligation

of the federal courts to exercise the jurisdiction given them." Id. at 30, quoting Colorado River, 424 U.S.

800, 817 (1976)).  The United States Supreme Court has provided guidance concerning the Colorado

16

River doctrine as well.Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983). It has stated, "abstention from the exercise of federal jurisdiction **is the exception, not the rule.**" Id. at 14.  The concept of abstention under which a District Court may decline to exercise jurisdiction "**is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.**" Id. at 14.  And abstention is only to be applied in "**exceptional circumstances.**" Id. at 14 (quoting Colorado River, 424 U.S. 800, 813 (1976) which was in turn quoting from County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)).  After discussing the factors that might permit abstention under Colorado River, the Supreme Court stated, "only the clearest of justifications will warrant dismissal." Id. at 16. In determining whether it should decline to exercise jurisdiction, a District Court must conduct a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Id. at 16.

Colorado River explains that in the absence of the application of a major abstention doctrine, as in cases where unique issues of state law are at issue, this Court should examine six factors before giving up jurisdiction of a case and that these factors should be viewed with an eye toward keeping jurisdiction in the federal court.  Id. at 817.  The six factors are: 1) The court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts;     2) The inconvenience of the federal forum; 3) Avoiding piecemeal litigation; 4) The order in which jurisdiction was obtained; 5) Whether federal law or state law controls; and, 6) Whether the state forum will adequately protect the interests of the parties. Id. at 817.

In their Motion to Dismiss, Defendants concede that the first and second factors do not support a dismissal by the U.S. District Court.  Accordingly, Dr. Soni will focus on the issues relative to factor 3, avoiding piecemeal litigation, factor 4, the order in which jurisdiction was obtained, and factor 6, whether the state forum will adequately protect the interests of the parties.  Dr. Soni will also address factor five, whether federal law or state law controls  because the Defendants' claim that Factor 5 is "neutral" and

17

that is patently deceiving.  In fact, this non -neutral factor should weigh most heavily and should result in retention of this case by this Court.

Federal law will in fact control most of Dr. Soni's claims.  Therefore, the federal court should retain jurisdiction to hear Dr. Soni's False Claims Act Retaliation claims and federal Civil Rights claims, as the federal courts are uniquely qualified to adjudicate these claims.  Dr. Soni's claims that will be controlled by federal law include: Claim I (Unlawful Retaliation Under the False Claims Act), Claim II (Violations of 42 U.S.C. §1981), Claim III (Retaliation Under 42 U.S.C. §1981), Claim IV (Violations of 42 U.S.C. §2000e *et seq.*), and Claim V (Retaliation Under 42 U.S.C. §2000e *et seq.*).  In addition, although Claim VI (Conspiracy) did not specifically reference the federal law, it was filed under 42 U.S.C. §1985 (captioned Conspiracy to Interfere With Civil Rights).  Only Claim VII (Intentional Infliction of Emotional Distress) would deal solely or predominantly with Massachusetts state law.  With regard to the FCA claim, the Federal Court is the only Court which should hear this matter because Congress in drafting the FCA intended that the federal court maintain jurisdiction of such claims.  The Defendants were only able to point to one case where a state court determined that it held jurisdiction over FCA claims.  Meanwhile, Federal law predominates and  for this reason, this Court must retain jurisdiction.

Defendants contend that Factors 3, 4, and 6 lead to a conclusion that the Federal Court should abstain from exercising jurisdiction.  This contention is clearly disputed.

First, factor 3, avoiding piecemeal litigation, is the Defendants' strongest argument for the dismissal of this action by the Federal Court.  However, there is little danger of piecemeal litigation because the state law claims are limited to contractual claims and defenses, chapter 151B claims, defamation, and intentional interference with contractual or advantageous relations.  The federal court can exercise concurrent jurisdiction even while the state case is adjudicated. The original Complaint filed in state court by the Defendants cannot fairly adjudicate all of the issues involved in this litigation because

18

Dr. Day is not a party to that action, nor is Boston University. The Defendants' claims that the state court case is much further along than the federal action are untrue. The state court case was delayed or stayed during the summer of 2008. Discovery has barely started in the state case, and the Defendants have sought to obstruct discovery in that action. The pending action is easily distinguishable from the situation where a litigant files federal claims just a few weeks before a related state court case will be going to trial. Furthermore, the Defendants, through the state court action, sought a declaratory judgment that Dr. Soni is not entitled to return to work at BMC. Because Dr. Soni is now gainfully employed as a Neurosurgeon at another Massachusetts Hospital, it may be argued that she has no interest in returning to work at BMC and that the Declaratory Judgment Action issue is moot. Moreover, the Defendants charged Dr. Soni with Breach of Contract for failure to comply with her alleged record-keeping and billing obligations. It may be argued that the Defendants did not suffer any monetary damages from these alleged breaches, and the Defendants' claim for return of part of Dr. Soni's salary is specious and was never really a proper basis for state court action. Instead, it seems that the Defendants' singular purpose in filing in the state court was to avoid a federal court action tied with Dr. Day, who has been held at least upon a preliminary injunction a probable discriminator (Plaintiff's Ex. A). Defendants filing suit in state court is evidently more specious when once considers Dr. Soni's allegations that no other physician has been terminated for alleged record-keeping and billing deficiencies (Complaint para 246-254)  For all these reasons, there will be no piecemeal litigation of the federal issues, and the federal court should _not_ surrender jurisdiction over Dr. Soni's federal claims.

Second, factor 4, the order in which jurisdiction was obtained, should not be applied by the federal court in ruling on the Motion to Dismiss. The fact that Defendants filed their action in state court first, and thus won the "race to the courthouse," should not be determinative. This is especially true where they filed their state court case prematurely, and those proceedings were stayed or delayed while the parties pursued mandatory mediation during the summer of 2008 (Defendants admission in its

19

motion).  This is yet more evidence of their intent to interfere with federal court jurisdiction.  In addition, the Defendants have acknowledged that they were prompted to file their state court action in response to threats made by Dr. Soni that she was going to take legal action against them.  Therefore, Dr. Soni's claims are not vexatious; rather, the Defendants' initial state court action was a preemptive strike.

The fact that the Defendants filed their state court case first should not deter the federal court from exercising jurisdiction over Dr. Soni's claims.  If the Defendants can defeat federal jurisdiction in this case, future employers would be able to:  1) terminate an employee; 2) file a Declaratory Judgment action in state court claiming that the employee was terminated for a breach of contract; and 3) deprive the federal court from jurisdiction over federal claims rightfully belonging to the employee.

Third, factor 6, whether the state forum will adequately protect the interests of the parties, also should not persuade the federal court from surrendering jurisdiction in this case.  Congress intended federal courts to hear federal claims.  The interests of justice will best be served by permitting Dr. Soni to have her False Claims Act retaliation, 42 U.S.C. §1981, and 42 U.S.C. §2000e claims heard by the federal court that is uniquely qualified to adjudicate these claims.

Finally, the Colorado River Doctrine is to be used very rarely.  The United State Supreme Court stated therein that "Only the clearest of justifications will warrant dismissal." Colorado River at 819. Colorado River further stated, that Federal courts maintain "the heavy obligation to exercise jurisdiction." Id. at 820.  Cases, including cases out of the District Court in Massachusetts find that the Federal Court should retain jurisdiction even where a prior, parallel action is pending in state court and are telling on the factors at issue here.  See e.g. Pearson v. Town of Rutland, 2002 WL 32759592 (D. Mass. 2002).  In Pearson, the U.S. District Court denied the Motion to Dismiss filed by the defendant First Massachusetts Bank, N.A., and found that dismissal by the federal court was not warranted even though there was a prior, parallel action pending in a state court in New Hampshire.  The District Court of Massachusetts in Pearson stated, "a federal court may not depart from its 'virtually unflagging obligation' to exercise

20

jurisdiction when authorized to do so by Congress." Id. at 4.  The District Court of Massachusetts warned against application of the Colorado River doctrine, noting, "typically, a district court exercises wide discretion when determining if the 'exceptional circumstances' are present that warrant abstention after Colorado River and its progeny." Id. at 4.  Of course, the Pearson court recognized that "although not dispositive, the presence of a federal question in the litigation (as here in Dr. Soni's case) weighs against abstention under Colorado River." Id. at 5. Pearson involved actions violative of constitutional rights, and, as such the federal court retained jurisdictions. Id. at 5.  In addressing the risk of piecemeal litigation, the court observed, as in Dr. Soni's current suit that "not all the defendants in this matter are parties to the New Hampshire suit," finding that the presence of additional parties militates against abstention. Id. at 5. The Pearson Court also held that "Although the state complaint preceded the federal complaint, timing is not conclusive lest abstention be deemed to depend upon a race to the courthouse." Id. at 6. The court noted, much like in the instant case, that "there is no credible allegation here that the New Hampshire action is farther advanced than the instant case." Id. at 6.  The Court also stated, "Duplication and inefficiency, without more, are insufficient grounds on which to justify abstention." Id. at 6. Of note, Pearson was a section 1983 case, a matter which could have been heard in the state court and the Pearson court stated "Congress has deliberately afforded the section 1983 plaintiff an alternative forum . . . and this Court's obligation to exercise jurisdiction is only enhanced when faced with an issue of federal constitutional dimension." Id. at 6.

On the facts and on the law, this Court must exercise its unflagging obligation to hear Dr. Soni's claims.

VI.     DR. SONI'S WAS NOT REQUIRED TO BRING HER CLAIMS AS COMPULSORY
        COUNTERCLAIMS.

Dr. Soni repeats her preemption arguments here that indicate this Court has exclusive jurisdiction over her FCA claims and her Colorado River doctrine indicating that this court should accept and retain

not only her FCA claims but all others within the current complaint. This Court should not condone the bad faith of Defendants in filing a declaratory judgment action with the purpose of destroying federal court jurisdiction by finding Dr. Soni's claims are compulsory counterclaims in state court. Such a finding is not warranted on the facts or on the law. Dr. Soni has different parties in this instant action and different non contractual claims to allege. The state court case is based on contract. Dr. Soni counterclaimed with what was minimally necessary in state court. She had an obligation to file her FCA claims here and she cannot tell the complete story here without her associated claims. Counterclaims must be heard if they "derive from a common nucleus of operative fact" or "are such that . . . would ordinarily be expected to [be] tried . . . in one judicial proceeding." Penobscot Indian Nation v. Key Bank of Maine, 112 F.3d 538 (1st Cir. 1997) citing United States Mine Workers v. Gibbs, 383 U.S. 715 (1966). In fact, if the claims are compulsory then they must be heard hear as this Court can hear all matters under supplemental jurisdiction, but the state court cannot hear the FCA claims. Id. At 564.

VII.   DR. SONI HAS PLED HER CASE CLEARLY AND WITH THE DETAIL REQUIRED OF CLAIMS OF THIS NATURE AND IN SO DOING HAS COMPLIED WITH MASS. R. CIV. P. 8A.
      Defendants cite to one case in support of their arguments that Dr. Soni's complaint should be dismissed because a complaint which fails to state a simple, concise claims is subject to dismissal. However, the case cited for that proposition by Defendants, McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir.) cert denied, 342 U.S. 894 (1951) concerned a complaint which the First Circuit found argumentative, prolix, redundant and verbose, and which it indicated attached lengthy letters, including citations to law, and affidavits containing evidentiary matter, including purported statements made by some of the defendants. Id at 766. The First Circuit in McCoy noted it would be hard to imagine a pleading more completely at variance with both the letter and the spirit of Rule 8(e)(1). Id at 766  Such is not the case with respect to Dr. Soni's Complaint.

      Dr. Soni has taken care to organize her factual claims by topic heading and to likewise

22

identify her claims by count. Her claims are detailed of necessity to apprise Defendants of the factual basis therefore. No doubt had Dr. Soni provided less detail, Defendants would argue that she fails to state a claim. In fact, they do so argue. Dr. Soni's complaint is more like the complaint by plaintiffs in <u>Newman v. Massachusetts</u>, 115 F.R.D. 341, 343 (1987), where Judge Tauro examined whether the complaint should be dismissed for failure to state claims concisely and simply. There Judge Tauro found that the detail within Plaintiff's Complaint was necessary and relevant in light of the complex nature of the Plaintiff's action and the long procedural history of its facts. Judge Tauro relied on *Moore's Federal Practice* for the proposition that the pleading of evidence is allowed if it aids in the presentation of the case or is harmless. *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* para. 8.13, at 8-69 (2d ed. 1986). Judge Tauro further stated as a general rule motions to strike are not favored and an entire pleading should be stricken only where there is a gross violation of Rule 8. <u>Newman v. Massachusetts</u>, 115 F.R.D. 341, 343 (1987). There has been no such gross violation of pleading practice by Dr. Soni. Accordingly, for the reason that the detail within Dr. Soni's complaint was necessary in light of the complexity of the facts and law relevant to her claims, Defendants motion to dismiss and or strike must be denied.

<div align="center">CONCLUSION</div>

For all of the foregoing reasons, the Defendants' motion must be denied.

<div style="margin-left:40%">
Respectfully Submitted
For Dr. Deepa Soni

By her attorney,


/s/ Elise A. Brassil

_____
Elise A. Brassil
Law Offices of Elise A. Brassil
BBO #641411
300 Brickstone Square, Suite 201
</div>

Andover, MA 01810
(978) 662-5116 (telephone)
(978) 809-3043 (fax)